**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

CARL E. HOBBS,

                Plaintiff,

vs.                                       Case No.  3:09-cv-145-J-JRK

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

_____/

## OPINION AND ORDER[1]

### I.  Status

      Carl E. Hobbs ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claim for disability insurance benefits.  His alleged inability to work is based on "[a] [b]ack injury, degener[ative] arthritis, depression, [carpal] tunnel [syndrome of the] right hand, wrist fusion, neck pain, [and] headaches," Transcript of Administrative Proceedings (Doc. No. 11; "Tr.") at 107, as well as "degenerative disc disease of the low back and neck, right rotator cuff tear . . . and anxiety," Memorandum in Support of Complaint (Doc. No. 14; "Pl.'s Mem.") at 2.  On February 12, 2007, Plaintiff filed an application for disability insurance benefits.  Tr. at 80-81.  Plaintiff alleged an onset date of October 2, 2005.  Tr. at 80.  An Administrative Law Judge ("ALJ") held a hearing on September 23, 2008, Tr. at 389-419, and issued a Decision on October 17, 2008, finding Plaintiff not disabled through the date of the Decision.  Tr. at 10-22.  On February 4, 2009, the Appeals Council denied Plaintiff's request for review.  Tr. at 4-6.  On February 19, 2009,

---

[1]    The parties consented to the exercise of jurisdiction by a United States Magistrate Judge, <u>see</u> Consent to the Exercise of Jurisdiction by a United States Magistrate Judge (Doc. No. 13), and the Order of Reference was entered on May 28, 2009 (Doc. No. 15).

Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1) seeking review of the Commissioner's final decision. Plaintiff has exhausted the available administrative remedies, and the case is properly before the Court.

Plaintiff, who was thirty-nine years old at the time of his hearing before the ALJ, Tr. at 392, argues the ALJ erred in two ways: (1) "by not including all the limitations in the hypothetical to the vocational expert [("VE")]"; and (2) "by not fully evaluating or considering headaches and pain[.]" Pl.'s Mem. at 6-10 (capitalization and emphasis omitted). After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds the ALJ's decision is due to be affirmed.

## II.  The ALJ's Decision

When determining whether an individual is disabled, an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the plaintiff: (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. See 20 C.F.R. §§ 404.1520 and 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The ALJ performed the required five-step sequential inquiry. At step one, the ALJ established Plaintiff has not engaged in substantial gainful activity since October 2, 2005 (the alleged onset date). Tr. at 15. At step two, the ALJ found Plaintiff suffers from the following severe impairments: "disorders of the spine, right wrist Kienbock's disease, partial right rotator cuff tear, affective disorder, DA&A[2], and antisocial personality disorder[.]" Tr. at 15. At step three, the ALJ

---

[2]         The Court surmises this reference is to drug and alcohol abuse.

stated Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. at 17.

The ALJ determined Plaintiff has the residual functional capacity ("RFC")

to perform light work . . . except he must be able to alternate positions from sitting and standing. He can occasionally bend, crouch, kneel, stoop, squat, or crawl. He must avoid ladders or unprotected heights and operation of heavy moving machinery. He must avoid pushing/pulling of arm controls. He needs a low stress work environment and can have only limited contact with the public.

Tr. at 18. At step four, the ALJ found Plaintiff is not capable of performing his past relevant work as a refrigerator technician, a forklift operator, and an automobile mechanic. Tr. at 20. At step five, the ALJ relied on the testimony of a VE and determined there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform, considering his age, education, work experience, and RFC. Tr. at 20-21. Namely, Plaintiff can work as a mailing clerk, a ticket seller/taker, an agricultural sorter, and a surveillance systems monitor. Tr. at 21. The ALJ concluded Plaintiff was not under a disability[3] from October 2, 2005 through the date of the decision. Tr. at 22.

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but

---

[3]     "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).

less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

Plaintiff argues the ALJ erred in two ways: (1) by failing to account for all of Plaintiff's limitations resulting from his impairments in presenting the hypothetical to the VE; and (2) by improperly discounting Plaintiff's subjective complaints of headaches and pain. Pl.'s Mem. at 6-10. Each argument is addressed in turn.

### A.    Limitations Resulting From Impairments

Plaintiff first contends the ALJ did not include all limitations resulting from Plaintiff's physical impairment of Kienbock's diease and Plaintiff's mental impairments in formulating and presenting the hypothetical to the VE. Pl.'s Mem. at 6-9. Although Plaintiff "would concede that the [ALJ] considered most of the [P]laintiff's limitations in framing the hypothetical" to the VE, Plaintiff alleges the ALJ did not account for Plaintiff's "right wrist

K[ie]nbock's disorder, which is avascular necrosis of the wrist."[4]  Id. at 7.  Plaintiff points out

that "physicians from the disability determination service" determined the disorder "would

affect his ability to handle and finger either on a frequent or an occasional basis with his right

arm."[5]  Id.  Plaintiff alleges "the jobs that were cited by the [VE] required the frequent or

constant use of the hands," and "[i]f the Court finds that the Plaintiff is limited to frequent

handling and fingering, only the marker job survives."  Id. at 8.  In addition, with respect to

his mental limitations, Plaintiff argues that the "mild restrictions with regard to concentration,

persistence and pace" were not adequately considered by the ALJ when formulating the

hypothetical.  Id. at 8-9.

At the outset, the undersigned notes that Plaintiff has not challenged the ALJ's

assessment of Plaintiff's RFC, upon which the hypothetical was based.  Nevertheless, when

an ALJ relies on the testimony of a VE, "the key inquiry shifts [from the RFC assessment in

the ALJ's written decision] to the adequacy of the RFC description contained in the

hypothetical posed to the VE."  Corbitt v. Astrue, No. 3:07-cv-518-J-HTS, 2008 WL 1776574,

at *3 (M.D. Fla. Apr. 17, 2008) (unpublished).  "In order for a VE's testimony to constitute

substantial evidence, the ALJ must pose a hypothetical question which comprises all of the

---

[4]       Kienbock's disease is defined as "osteochondrosis affecting the lunate bone–called also *lunatomalacia*[.]"  Merriam-Webster's Medical Dictionary, available at http://www.merriam-webster.com/medical/kienbock's%20disease (last visited March 24, 2010).

[5]       Plaintiff does not name the physicians, nor does he cite any record evidence in support of this assertion.  See Pl.'s Mem. at 7.  The Commissioner surmises that this "argument is apparently based on the observation by William V. Choisser, M.D., a consultative examiner, that Plaintiff had reduced grip and fine dexterity on the right[.]"  Memorandum in Support of the Commissioner's Decision (Doc. No. 16; "Deft.'s Mem.") at 12 n.5 (citing Tr. at 234).  Without citation to any record evidence by Plaintiff, the Court is also left to infer but makes a different inference than that of the Commissioner.  In the recitation of the facts, Plaintiff cites evaluations from individuals Plaintiff contends are physicians for the Division of Disability Determinations.  See Pl.'s Mem. at 4 (citing Tr. at 246-253, 288).  According to Plaintiff, one of these individuals found Plaintiff was "limited to frequent handling and fingering in the right hand," Pl.'s Mem. at 4 (citing Tr. at 246-53), and another individual found Plaintiff was limited to "occasional handling and fingering," Pl.'s Mem. at 4 (citing Tr. at 288).  In light of these references, the Court assumes that Plaintiff is referring to these evaluations in asserting that the ability to handle and finger is "frequent[ly] or occasional[ly]" affected.  See Pl.'s Mem. at 7.

claimant's impairments." <u>Phillips</u>, 357 F.3d at 1240 n.7 (internal quotation and citation omitted). However, an ALJ is not required to include findings in the hypothetical that are properly rejected as unsupported by the evidence. <u>Crawford</u>, 363 F.3d at 1161. "[T]he ALJ has some discretion to craft hypothetical questions to communicate to the vocational expert what the claimant can and cannot do." <u>Fisher v. Barnhart</u>, 181 F. App'x 359, 364 (4th Cir. 2006) (unpublished).

The ALJ's hypothetical to the VE was as follows:

> Q Okay, assume I find the Claimant is 39 years old, has a GED, plus some college. Assume further, I find that he can only perform light work and is further limited by the following exertional and nonexertional[] impairments: he needs a sit/stand option. He needs to avoid the operation of heavy, moving, machinery. He needs to avoid unusual stress - - change that. He needs a low-stress work environment. He needs limited contact with the public. He can only occasionally bend, crouch, knee[l], stoop, squat or crawl. And he needs to avoid the push/pull of arm controls. Can the Claimant perform any of his past work?

> A No, sir.

> Q Okay, let's go down to entry level, and assume that the Claimant has no skills or semiskills at all and that he's the age I previously described and has the work experience and education previously stated. Assume further that he could perform light work and has the exertional and nonexertional[] limitations I originally described. Are there any entry-level jobs the Claimant could perform, and if so, could you give us the title of the job, the number of jobs in the region, which I have defined as the State of Florida, and if there are some non-included sedentary-level jobs, if you would describe those as well.

Tr. at 413. The VE went on to identify such "light exertion" jobs as "marking-clerk," "ticket-seller and -taker," and agricultural "sorter[.]" Tr. at 414. As far as a sedentary job, the VE identified "surveillance-system monitoring[.]" Tr. at 414.

### 1. Kienbock's Disease of the Right Wrist

Plaintiff's argues the ALJ did not sufficiently capture in the hypothetical to the VE any limitations resulting from the Kienbock's disease of the right wrist. Pl.'s Mem. at 7-8.

Plaintiff contends the ALJ did not take into account the opinions of the physicians from the Division of Disability Determinations that Plaintiff's ability to handle and finger is affected. Id. at 7. Apparently, Plaintiff is referring to the opinions of William Duke and Eric Puestow, M.D., who opined that Plaintiff is limited in the areas of handling and fingering. William Duke does not appear to be a medical doctor; rather, the Residual Functional Capacity Form he filled out indicates he is a "SDM," Tr. at 253, which stands for "a single decision-maker. . . not a doctor[.]" Castel v. Astrue, No. 09-12269, 2009 WL 4250063, at *4 (11th Cir. Nov. 30, 2009). On the form dated April 10, 2007, Mr. Duke found Plaintiff was limited to "frequently" handling and fingering, Tr. at 249, and on the same type of form dated June 25, 2007, Dr. Puestow found Plaintiff limited to occasional handling and fingering, Tr. at 291. Plaintiff's contention that the ALJ did not take into account these opinions is mistaken, as the ALJ specifically referred to these opinions in assessing Plaintiff's RFC. See Tr. at 20 (citing, inter alia, Tr. at 246-53, 288-95).[6] The ALJ, however, rejected such opinions to the extent they are inconsistent with the assessed RFC, explaining "the record does not contain any opinions from treating or examining physicians indicating that the claimant has limitations greater than those determined in this decision." Tr. at 20.

A review of the record indicates the ALJ's explanation for his rejection of additional limitations is supported by substantial evidence in the record. At the outset, the undersigned notes that while the record contains evidence documenting "post surgical changes" on or near Plaintiff's right hand, Tr. at 213 (duplicate at Tr. at 224), 214 (duplicate at Tr. at 225),

---

[6]    It appears the ALJ mistakenly believed Mr. Duke was a non-examining physician, when in fact, Mr. Duke was Plaintiff's single decision maker. See Tr. at 20 (stating "[t]hese physicians concluded that the claimant could perform light work. . ." (citing, inter alia, Tr. at 288-95)). However, because the ALJ did not rely on Mr. Duke's opinion in determining the limitations in the RFC relevant to this appeal, any such mistaken belief by the ALJ in this regard is harmless.

215 (duplicate at Tr. at 226), 216, the record does not indicate what type of surgery Plaintiff received. Nor are there any medical records from before or immediately after such surgery. Most of the documentation of any surgery comes from Plaintiff's self-reports to various examining physicians. For example, Lily S. Rocha, M.D., J.D., examined Plaintiff on April 3, 2007. Tr. at 233-34. Dr. Rocha's partner, William V. Choisser, M.D., J.D., documented Dr. Rocha's findings in a report in which he wrote the following:

> According to the patient, he was involved in an auto accident in the 1990s at which time he sustained injuries to his right wrist. He underwent several corrective surgeries, but still continues to have wrist pain and was diagnosed with Kienbock's disease. The result is that he has permanent swelling in his wrist as well as pain. He also reports that he has been told that he has carpal tunnel syndrome on that side and allegedly had a release at the time of one [of] his surgeries, but I see no ventral incision on the wrist that would be the only access for carpal tunnel release, so this is questionable.

Tr. at 233. Dr. Choisser went on to note that Plaintiff's "Grip and fine dexterity are 3/5 on the right and 5/5 on the left. Again, [Plaintiff] has trouble with any kind of repetitive sustained activity <u>with that right upper extremity</u>.[7] He has a negative Phalen's[8] and Tinel's sign[9] at both wrists today." Tr. at 234 (emphasis added). Dr. Choisser concluded that Plaintiff's range of motion in both his right and left hands, as well as both his right and left wrists, was in the normal range.[10] Tr. at 236.

---

[7]    Dr. Choisser's reference to limitations in the right upper extremity appears to be regarding Plaintiff's partial right rotator cuff tear.

[8]    The "Phalen maneuver" is used to detect carpal tunnel syndrome. <u>See</u> <u>Dorland's Illustrated Medical Dictionary</u> 1117 (31st Ed. 2007).

[9]    "Tinel sign" is "a tingling sensation in the distal end of a limb when percussion is made over the site of a divided nerve. It indicates a partial lesion or the beginning regeneration of the nerve." <u>Dorland's Illustrated Medical Dictionary</u> 1741 (31st Ed. 2007).

[10]    In fact, Dr. Choisser apparently found Plaintiff had full range of motion in both wrists and both hands. Tr. at 236.

In addition, Plaintiff reported to evaluating psychologist Peter Knox, M.Ed., Psy.D. on April 4, 2007 that he "'had nine operations on the right hand after [he] fell off a truck and [he] did not go to the doctor then it got worse, this was in the Nineties.'" Tr. at 240 (quoting Plaintiff). Plaintiff further reported with respect to limitations with his right hand that his doctor "said [he] can do what [he] want[s] with [his] hand but not to lift more than fifteen pounds with the right hand." Tr. at 242. Dr. Knox noted that Plaintiff had driven his motorcycle to the evaluation, Tr. at 242, and that Plaintiff's alleged back and hand pain were "not seen by observation," Tr. at 243.

Although he was treating Plaintiff for complaints of back pain rather than wrist pain, treating physician Frank R. Collier, Jr., M.D. indicated in his September 7, 2005 treatment notes that Plaintiff could "continue. . . [with] his regular duty work" and only directed the "avoid[ance] of heavy lifting over 100 pounds." Tr. at 185. These are Dr. Collier's most recent notes speaking to any work limitations or restrictions. Treatment notes from the University of Florida Commonwealth Family Practice Center dated October 2007 through August 2008 document intermittent complaints of wrist pain among the other pain complaints, see, e.g., Tr. at 383, 376, 370, 344, 343, 336, but there is no documented diagnosis regarding the alleged pain, nor are there any functional limitations of the wrist or hand documented.

Finally, although the ALJ rejected that Plaintiff has any limitation in handling and fingering, it is apparent the ALJ did take some limitation into account because he limited the hypothetical to a complete avoidance of pushing and pulling of arm controls. See Tr. at 413 (hypothetical to the VE), 18 (RFC in written Decision). Plaintiff contends such a limitation only accounted for his right rotator cuff tear, Pl.'s Mem. at 7, but pushing and pulling arm

controls necessarily requires some use of the wrists and hands, as well as the arms. The ALJ obviously took into account those limitations resulting from the Kienbock's disorder that he found supported by the evidence, and he properly discounted the alleged limitations in handling and fingering that were not supported. See Crawford, 363 F.3d at 1161.

It is evident that the ALJ was considering Plaintiff's physical impairments in combination when assessing the RFC. Furthermore, it is clear that the ALJ considered the limitations resulting from Plaintiff's Kienbock's disorder, but properly rejected those limitations the ALJ found were not supported by the evidence. The limitations that were found by the ALJ and supported by the evidence were adequately incorporated into the RFC and posed in the hypothetical to the VE. As the ALJ's Decision in this regard is supported by substantial evidence, it will not be disturbed.[11]

### 2. Limitations in Concentration, Persistence, and Pace

With respect to Plaintiff's argument that the ALJ's hypothetical to the VE did not include his limitations in concentration, persistence, and pace, Pl.'s Mem. at 8-9, it is also apparent that the ALJ took these limitations into account in assessing Plaintiff's RFC and posing the hypothetical to the VE. In evaluating a claimant's mental condition, the Regulations direct the use of the psychiatric review technique. See 20 C.F.R. §§ 404.1520a and 416.920a. The psychiatric review technique is embodied by the psychiatric review technique form ("PRTF") and is further described in the preface of section 12.00 of the listing of impairments. See 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00. In the first step of the psychiatric review technique, it is determined whether a claimant has a medically determinable mental impairment using the criteria in "paragraph A" of the listings. 20 C.F.R.

---

[11] In any event, Plaintiff concedes that the "marker job" identified by the VE would survive even with the handling and fingering limitations that Plaintiff alleges. Pl.'s Mem. at 8.

§§ 404.1520a(b)(1) and 416.920a(b)(1); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00.[12]  Next, the degree of functional limitation relating to such impairment is ascertained.  20 C.F.R. §§ 404.1520a(c) and 416.920a(c).  In determining the degree of functional limitation resulting from a mental impairment, four "broad functional areas" in "paragraph B" of the listings are rated: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  20 C.F.R. §§ 404.1520a(c)(3) and 416.920a(c)(3); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00.  The first three broad functional areas are rated using a five-point scale: none, mild, moderate, marked, and severe.  20 C.F.R. §§ 404.1520a(c)(4) and 416.920a(c)(4); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00.  If the criteria under paragraph B do not establish that the claimant is disabled, depending on the type of mental disorder, the criteria under "paragraph C" are considered.  20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00.[13]

Next, if paragraph C does not establish that the claimant is disabled, the severity of the mental impairment is determined based on the degree of limitations in the four broad functional areas.  See 20 C.F.R. §§ 404.1520a(d) and 416.920a(d); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00.  If the claimant is determined to have a severe mental

---

[12]  The medical findings associated with affective disorders, including depression and anxiety, are listed in paragraph A of listing 12.04.  See 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04.  The medical findings associated with personality disorders, including antisocial personality disorder, are listed in paragraph A of listing 12.08.  See 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.08.

[13]  For affective disorders, the paragraph C criteria are as follows: "Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:  1. Repeated episodes of decompensation, each of extended duration; or 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement with an indication or continued need for such an arrangement."  20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04(c).  Personality disorders do not have paragraph C criteria.  20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.08.

impairment that does not meet or medically equal any of the listing of impairments, then the claimant's RFC is assessed.  20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00.  The ratings of the claimant's limitations in the four broad functional areas pursuant to the psychiatric review technique "are not an RFC assessment but are used to rate the severity of mental impairments at steps [two] and [three] of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4.  "The mental RFC assessment used at steps [four] and [five] of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the [listings]."  Id.

When making the more detailed assessment and itemizing the claimant's various functions in assessing RFC at steps four and five of the sequential evaluation process, "[n]onexertional capacity[14] must be expressed in terms of work-related functions."  Id. at *6.  "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting."  Id.; see also 20 C.F.R. §§ 404.1545(c) and 416.945(c); Pabon v. Barnhart, 273 F. Supp. 2d 506, 515-16 (S.D.N.Y. 2003).  The assessment of functional limitations resulting from mental impairments "is a complex and highly individualized process that requires [consideration of] multiple issues and all relevant evidence to obtain a longitudinal picture of [the claimant's] overall degree of functional limitation."  20 C.F.R. §§ 404.1520a(c)(1) and 416.920a(c)(1).

---

[14] "Nonexertional capacity measures all work-related limitations and restrictions that do not depend on an individual's physical strength; i.e., all physical limitations and restrictions that are not reflected in the seven strength demands, and mental limitations and restrictions."  SSR 96-8p, 1996 WL 374184, at *6.

Here, the ALJ found at step two that Plaintiff has severe mental impairments of "affective disorder" and "antisocial personality disorder[.]"  Tr. at 15.  The ALJ further found that Plaintiff "has mild restrictions in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace;[15] and no episodes of decompensation" as a result of such severe impairments.  Tr. at 17.  The ALJ recognized in his Decision the requirements of SSR 96-8p.  See Tr. at 18.  The ALJ specifically referred to the "'paragraph B' mental function analysis" and indicated that the RFC assessment "reflects the degree of limitation" found as a result of the paragraph B analysis.  Tr. at 18.

In assessing the RFC in his Decision, the ALJ translated Plaintiff's limitations resulting from his mental impairments from the four broad functional areas to work-related functions: "He needs a low stress work environment and can have only limited contact with the public."  Tr. at 18.  Those limitations were also conveyed to the VE in the hypothetical.  Tr. at 413.  Plaintiff argues that "restrictions with regard to concentration, persistence and pace" are "different tha[n] an anti-social personality disorder or the need for a low stress work environment[.]"  Pl.'s Mem. at 8.  However, the ALJ found that such restrictions are a result of Plaintiff's mental impairments, including the anti-social personality disorder.  The ALJ itemized the restrictions, as required by SSR 96-8p, into the work-related functions identified in the RFC and the hypothetical to the VE: one of those being the need for a low stress work environment, and another being limited contact with the public.  Tr. at 18.

---

15    "Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings."  20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(C)(3)

In addition to those restrictions listed in the RFC in the Decision, the ALJ posed restrictions of "no skills or semiskills at all" in the hypothetical to the VE, Tr. at 413, which necessarily limited the VE to identifying only unskilled work. "Unskilled work" is a term of art that is defined by the Regulations. Fisher, 181 F. App'x at 364. It is "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568 and 416.968. Thus, by finding Plaintiff is able to do only unskilled work, the ALJ included in the hypothetical that Plaintiff is only able to perform simple duties that require little or no judgment and can be learned on the job in a short period of time.[16]

In sum, the ALJ found as a result of Plaintiff's mental impairments that Plaintiff needs a low stress work environment, can have only limited contact with the public, and is only able to perform simple duties that require little or no judgment and can be learned on the job in a short period of time. The ALJ crafted a hypothetical including all of these work-related functions that communicated to the VE what Plaintiff could and could not do, as was within the ALJ's discretion. See Fisher, 181 F. App'x at 364.

The hypothetical here is similar to others that courts have accepted as sufficient to incorporate the finding that a claimant has moderate difficulties in concentration, persistence, or pace. For example, in Fisher, the ALJ determined that the claimant's adjustment disorder and borderline intellectual functioning mildly restricted his activities of daily living, caused mild difficulty with social functioning, and resulted in moderate difficulties in maintaining concentration, persistence, and pace. Id. at 362.[17] The ALJ's hypothetical

---

[16]     As this is a determination as to what Plaintiff is able to do despite his limitations, it was within the province of the ALJ. See 20 C.F.R. §§ 404.1545(a) and 419.945(a); see also Fisher, 181 F. App'x at 365.

[17]     As the only impairments that are relevant for purposes of discussion here are mental impairments, the undersigned does not discuss the physical impairments that were present in Fisher.

asked the VE to assume that the claimant was capable of only unskilled work and could not perform complex tasks. Id. at 364. The United States Court of Appeals for the Fourth Circuit found the ALJ committed no error because the hypothetical incorporated an RFC assessment that was supported by substantial evidence. Id. at 365.

Similarly, in Stout v. Astrue, No. 3:07-cv-987-J-TEM, 2009 WL 890388 (M.D. Fla. Mar. 31, 2009), the ALJ found the claimant to have an affective disorder (anxiety/depression) that resulted in no restriction of activities of daily living, no difficulties in maintaining social functioning, and "mild to moderate difficulties in maintaining concentration, persistence, or pace." Stout, 2009 WL 890388, at *3.[18] The ALJ's hypothetical asked the VE to assume that the claimant was required to avoid work that involved exposure to unusual stress and further modified the hypothetical to assume entry level work in which the claimant had no skills or semi-skills. Id. at *4. After distinguishing other cases, the Stout court concluded that the claimant's mental limitations were "adequately accounted for in the functional limitation requiring Plaintiff 'avoid work that involves exposure to unusual stress.'" Id. at *5-6 (quoting ALJ); see also Bordelon v. Astrue, 281 F. App'x 418, 423 (5th Cir. 2008) (unpublished) (concluding that the ALJ's finding that the claimant had moderate limitations in concentration, persistence, and pace was sufficiently incorporated into a hypothetical that restricted the claimant to only rare public interaction, low stress, and "simple, one-, two-step-type instructions"); Smith v. Halter, 307 F.3d 377, 379 (6th Cir. 2001) (concluding that the finding claimant "often" suffered deficiencies in concentration, persistence, or pace resulting in a failure to complete tasks in a timely manner was sufficiently incorporated into a hypothetical that limited the claimant to

---

[18]     As the only impairments that are relevant for purposes of discussion here are mental impairments, the undersigned does not discuss the physical impairments that were present in Stout.

jobs that are routine, low-stress, and do not involve interpersonal confrontations or high quotas).

Moreover, a comprehensive review of the treatment records related to Plaintiff's mental impairments reveals substantial evidence to support the view that Plaintiff's mental impairments are not so severe that he is incapable of performing even simple duties that require little or no judgment and can be learned in a short period of time. Also, the additional limitations of low stress work environment and only limited contact with the public found in the assessment of the RFC and the formulation of the hypothetical to the VE were sufficient to account for Plaintiff's mental impairments.

As pointed out by the Commissioner, it appears the ALJ afforded Plaintiff the benefit of any doubt with respect to limitations arising from his mental impairments. See Deft.'s Mem. at 13 (citing Tr. at 241, 254, 274, 296). Plaintiff has sought minimal treatment for such impairments. See Tr. at 399 (Plaintiff testifying, "I was being treated for depression, but that stopped. The depression hasn't gone away."), 407-08 (Plaintiff testifying, "the doctor [treating him for mental issues] said that unless I tried to kill myself, I didn't have to come back."), 296 (treatment notes from Julide Ozan, PA-C at Shands Jacksonville dated June 24, 2008 indicating Plaintiff was "off of antidepressants times 1 month with no adverse effects, and to be discharged back to the care of his primary care physician Dr. Ann Gajda"). In addition, consultative evaluating psychologist Peter Knox, M.Ed., Psy.D., found on April 4, 2007 that Plaintiff had "[n]o significant issues" in the area of concentration and persistence, and "[n]o significant impairment" in the area of work related mental activities. Tr. at 242. Non-examining psychologists Theodore Weber, M.Div., Psy.D. and Val Bee, Psy.D. opined on April 10, 2007 and June 18, 2007, respectively, that Plaintiff only had mild

difficulties in activities of daily living; mild difficulties in maintaining social functioning; and mild difficulties in maintaining concentration, persistence, or pace; with no episodes of decompensation lasting any extended duration.  Tr. at 264, 284.  These psychologists also opined Plaintiff did not suffer from a severe mental impairment.  Tr. at 254, 274.

Both the RFC and the hypothetical to the VE incorporated all limitations resulting from Plaintiff's physical and mental impairments, and such assessments are supported by substantial evidence in the record.

### B.    Plaintiff's Headaches and Pain

Plaintiff argues the ALJ erred because he did "not fully evaluat[e] or consider[] headaches and pain."  Pl.'s Mem. at 10.  "In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain."  Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)).  If it is determined that a claimant has a medical condition that could reasonably give rise to the subjective symptoms alleged, "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability."  Foote, 67 F.3d at 1561.

"The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability."  Holt, 921 F.3d at 1223; Foote, 67 F.3d at 1561.  Although "credibility determinations are the province of the ALJ," Moore

v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005), "explicit and adequate reasons" must be articulated if the ALJ discredits the claimant's testimony. Wilson, 284 F.3d at 1225; see also Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005); Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (stating that "after considering a claimant's complaints of pain [or other subjective symptoms], the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence"). When evaluating a claimant's subjective symptoms, the relevant factors include the following:  (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatment, other than medication; (6) measures used to alleviate pain or other symptoms; and (7) the claimant's functional limitations.  20 C.F.R. §§ 404.1529(c) and 416.929(c); see also Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished).

Contrary to Plaintiff's assertion that "[i]t is unclear. . . if the Court ever considered the effects of the [P]laintiff's migraine headaches even though there are references to that type of pain in the record," Pl.'s Mem. at 10, a review of the ALJ's Decision reveals that he specifically referenced Plaintiff's complaints of headaches and treatment sought.  The ALJ summarized, in detail, Plaintiff's testimony regarding such headaches:

> He stated that he kept a headache 24 hours a day.  He stated that he took Imitrex.  He stated that doctors told him the pain in his head and leg were related to his back.  He stated that his headaches got bad 1-2 times per week at which time he had to take his medications and lay in a dark room.  The claimant testified that he began having headaches around 2006.

Tr. at 19.  Furthermore, the ALJ recognized that Plaintiff had been treated at Shands Jacksonville from October 30, 2007 through June 24, 2008 for, inter alia, "headache pain." Tr. at 16-17 (referring to Tr. at 296-322).  The ALJ noted records from the UF Commonwealth Family Practice Center from October 25, 2007 through August 12, 2008

document treatment "for migraine type headaches[.]" Tr. at 17 (referring to Tr. at 323-88). The ALJ also pointed out that "[i]n July of 200[]8, the claimant reported improvement in depression and headaches with medication." Tr. at 17; see also Tr. at 336 (treatment notes dated July 11, 2008 indicating "[h]eadache . . . is improving"). It is clear that the ALJ considered Plaintiff's alleged migraine headaches.

With respect to Plaintiff's generalized complaints of pain,[19] the ALJ discredited such testimony, finding that "the claimant's statements concerning the intensity, persistence, and limiting effects of the[] symptoms [Plaintiff alleges] are not credible to the extent they are inconsistent with the [RFC.]" Tr. at 19. The ALJ articulated specific reasons for discrediting Plaintiff's testimony, including: (1) Plaintiff's daily activities "are consistent with the [RFC]"; (2) Plaintiff's medical "treatment has been essentially routine and/or conservative in nature"; (3) "the record documents treatment gaps in the claimant's medical treatment"; (4) "consultative examinations, both psychological and physical, do not document any significant limitations that would prevent the claimant from working"; (5) "the medical records reveal that the medications are relatively effective in controlling the claimant's symptoms"; (6) Plaintiff's "description of symptoms and limitations . . . has generally been inconsistent"; and (7) Plaintiff's appearance and demeanor at the hearing was inconsistent with someone who is in pain or discomfort.[20] Tr. at 19-20. Plaintiff does not attack any of these reasons

---

[19]     Plaintiff does not articulate any reasons why the ALJ's determination with respect to Plaintiff's generalized allegations of pain was allegedly erroneous. See generally Pl.'s Mem. To the extent Plaintiff's arguments can be construed as attacking the ALJ's analysis regarding Plaintiff's generalized pain, the ALJ's analysis is addressed herein.

[20]     As the ALJ recognized, see Tr. at 20, it would have been improper for the ALJ to have relied solely upon his observations of Plaintiff at the hearing to discredit Plaintiff's subjective complaints of pain. See Freeman v. Schweiker, 681 F.2d 727, 731 (11th Cir. 1982). Such "sit and squirm jurisprudence" has been described as an approach in which "an ALJ who is not a medical expert will subjectively arrive at an index of
(continued...)

as being unsupported by substantial evidence.  <u>See generally</u> Pl.'s Mem.  An independent review of the record reveals that such reasons are adequate and are supported by substantial evidence.  <u>See</u> <u>Wilson</u>, 284 F.3d at 1225; <u>see also</u> <u>Dyer</u>, 395 F.3d at 1210; <u>Marbury</u>, 957 F.2d at 839.  Accordingly, the ALJ properly discredited Plaintiff's subjective complaints of pain.

## V.  Conclusion

In formulating the hypothetical to the VE, the ALJ considered all of Plaintiff's limitations resulting from his impairments.  In addition, the ALJ properly considered Plaintiff's allegations of headaches, and properly discredited Plaintiff's subjective allegations of pain to the extent that such allegations are inconsistent with the RFC determination. A review of the entire record reveals that the Commissioner's final decision is supported by substantial evidence.  In accordance with the foregoing, it is

**ORDERED:**

1.    The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's final decision.

---

[20](...continued)
traits which he expects the claimant to manifest at the hearing." <u>Id.</u>  "If the claimant falls short of the index, the claim is denied." <u>Id.</u>; <u>see also</u> <u>Johns v. Bowen</u>, 821 F.2d 551, 557 (11th Cir. 1987); <u>McRoberts</u>, 841 F.2d 1077 at 1081 (stating that "'sit and squirm' jurisprudence has no place in this circuit"). Nevertheless, an ALJ is not prohibited from considering a claimant's appearance and demeanor during the hearing, so long as the ALJ's observations do not displace the other evidence.  <u>See</u> <u>Macia v. Bowen</u>, 829 F.2d 1009, 1011 (11th Cir. 1987). It is clear here that the ALJ did not displace the other evidence with his observations, but merely included them in his overall findings regarding Plaintiff's credibility.

2.    The Clerk is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on March 26, 2010.

**JAMES R. KLINDT**
United States Magistrate Judge

kaw

Copies to:

Counsel of Record